**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

JESSICA ELLVINGER,

      Plaintiff,

vs.                                                                                                No. 1:19-CV-00385-KRS

ANDREW SAUL, Commissioner of
Social Security,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing with Supportive Memorandum (Doc. 17), dated September 25, 2019, challenging the determination of the Commissioner of the Social Security Administration ("SSA") that Plaintiff is not entitled to disability insurance benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-34, 1381-83f. The Commissioner responded to Plaintiff's motion on January 15, 2020 (Doc. 22), and Plaintiff filed a reply brief on February 24, 2020 (Doc. 23). With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b), the Court has considered the parties' filings and has thoroughly reviewed the administrative record. Having done so, the Court concludes that the Administrative Law Judge ("ALJ") erred in her decision and will therefore GRANT Plaintiff's motion.

### I. PROCEDURAL POSTURE

On March 28, 2014, Plaintiff filed an initial application for disability insurance benefits and supplemental security income. (*See* Administrative Record ("AR") at 127-28). Plaintiff alleged that she had become disabled on March 10, 2014, due to bipolar disorder, manic-depressive disorder, thyroid problems, and emotional pain. (*Id.* at 255, 260). Her applications

were denied at the initial level on September 9, 2014 (*id.* at 89-128), and at the reconsideration level on January 12, 2015 (*id.* at 129-57). Plaintiff requested a hearing (*id.* at 166-70), which ALJ Ann Faris conducted on October 18, 2016 (see *id.* at 52-88). Plaintiff was represented by counsel and testified at the hearing. (*Id.* at 52, 57-77). Plaintiff's father also testified at the hearing, as did vocational expert ("VE") Mary Diane Weber. (*Id.* at 78-86).

On February 15, 2017, the ALJ issued a decision finding that Plaintiff was not disabled under the relevant sections of the Social Security Act. (*Id.* at 37-46). Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 30-33), but this request was denied (*id.* at 1-4). Plaintiff subsequently sought judicial review, and on July 10, 2018, the Honorable Laura Fashing, United States Magistrate Judge, granted the Commissioner's unopposed motion to remand the case to the SSA for further proceedings. (*See id.* at 834-36).[1]

On remand, the Appeals Council held in an August 7, 2018 order that the ALJ had not properly evaluated the opinion evidence of Plaintiff's treating psychiatrist, Fenimore Sartorius, M.D.; that the ALJ's weighting of opinion evidence from Plaintiff's mother did not comport with SSA regulations; and that the ALJ's determination concerning Plaintiff's residual functional capacity ("RFC") failed to comply with SSA policy and was not supported by substantial evidence. (*See id.* at 839-41). The Appeals Council then remanded Plaintiff's case to the ALJ, directing her to evaluate opinion evidence in compliance with SSA regulations, to obtain evidence from a psychological or psychiatric expert concerning Plaintiff's mental impairments, to give further consideration to Plaintiff's RFC with specific references to the record, and to obtain supplemental evidence from a VE if necessary. (*Id.*); *see also* 20 C.F.R. §§ 404.977, .983 (discussing SSA procedures on remand from district court).

---

[1] *See also* Order (ECF. 18), *Ellvinger v. Berryhill*, 1:18-cv-23-LF (D.N.M. July 10, 2018).

Meanwhile, Plaintiff filed a subsequent claim for benefits under Title II and Title XVI of the Social Security Act on January 16, 2018. (*See* AR at 843-44). In her newer applications, Plaintiff alleged that she became disabled on June 30, 2016 due to bipolar disorder, manic-depression, anxiety, and post-traumatic stress disorder. (*See id.* at 1076, 1080). Plaintiff's newer applications were denied at the initial level on May 4, 2018. (*Id.* at 843-74). On August 7, 2018, pursuant to the Appeals Council's order of that date in Plaintiff's earlier case, Plaintiff's newer claims file was consolidated with her earlier claim. (*See id.* at 841). On September 13, 2018, Plaintiff's now-consolidated newer applications were denied at the reconsideration level. (*Id.* at 875-912, 938-45).

Plaintiff again requested a hearing before the ALJ. (*See id.* at 946-47). On November 27, 2018, the ALJ conducted a hearing as to the consolidated claims file. (*See id.* at 772-805). Plaintiff was again represented by counsel and testified at this hearing. (*See id.* at 772, 778-95). Also testifying at the hearing was non-examining psychological consultant Kristy Farnsworth, Ph.D. (*id.* at 795-800), and VE Leslie White (*id.* at 800-03).

On February 26, 2019, the ALJ issued her decision, finding that Plaintiff was not disabled under the relevant sections of the Social Security Act. (*Id.* at 747-62). Plaintiff did not file exceptions to the ALJ's decision, and the Appeals Council did not otherwise assume jurisdiction; thus, the ALJ's decision became the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.984(d). On April 26, 2019, Plaintiff filed the complaint in this case seeking review of the Commissioner's decision. (Doc. 1).

## II. LEGAL STANDARDS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118; or if it "constitutes mere conclusion," *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "Failure to apply the correct legal standard or to provide this court with a

4

sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted).

## B.  Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. If a finding of disability or non-disability is directed at any point, the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of his impairment or combination of impairments. *See id.* at 24-25. If no finding is directed after the third step, the Commissioner must determine the claimant's RFC, or the most that he is able to do despite his limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). At step four, the claimant must prove that, based on his RFC, he is unable to perform the work he has done in the past. *See Thomas*, 540 U.S. at 25. At the final step, the burden shifts to the Commissioner to determine whether, considering the claimant's vocational factors, he is capable of performing other jobs existing in significant numbers in the national economy. *See id.*; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III. THE ALJ'S DETERMINATION

The ALJ reviewed Plaintiff's claim pursuant to the five-step sequential evaluation process. (AR at 748-50). First, while acknowledging that Plaintiff had engaged in some amount of work since her onset date, the ALJ determined that none of this work amounted to substantial gainful activity. (*Id.* at 750). She then found at step two that Plaintiff suffered from the following severe impairments: bipolar disorder, anxiety disorder, and polysubstance abuse. (*Id.*). The ALJ also found that Plaintiff suffered from non-severe impairments of sleep apnea, migraine headaches, hypothyroidism, and obesity. (*Id.* at 750-51). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments which met the criteria of listed impairments under Appendix 1 of the SSA's regulations. (*Id.* at 751-53).

Proceeding to the next step, the ALJ reviewed the evidence of record, including evidence from medical and non-medical sources and Plaintiff's own subjective symptom evidence. (*Id.* at 753-760). In doing so, the ALJ accorded only "limited weight" to Plaintiff's treating physician, Dr. Sartorius, and to two treating nurse practitioners, Linda Ross, CNP, and Shari Scott, PMHNP,[2] all three of whom provided opinions supporting a finding that Plaintiff is disabled. (*See id.* at 756-59) (citations omitted). The ALJ also assigned "little weight" to the opinions of two psychological consultative examiners ("CEs"), John Lang, Ph.D., and Eligio R. Padilla, Ph.D. (*see id.* at 756, 759); Dr. Lang had found that Plaintiff "cannot hold a steady job" because of her symptoms (*id.* at 491-94), while Dr. Padilla had found multiple "marked" limitations in Plaintiff's ability to function (*id.* at 18-29). Conversely, the ALJ accorded "significant weight" to

---

[2] The ALJ incorrectly stated that Ms. Scott has a Ph.D. (AR at 758), when in fact the parties concede that she is a nurse practitioner and therefore is not an "acceptable medical source," *see, e.g.*, SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). It appears that the ALJ improperly treated Ms. Scott as an acceptable medical source when weighting her opinions. (*See* AR at 758) (citing 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6)) (applying regulations concerning the weighting of acceptable medical source opinions to Ms. Scott's opinion). On remand, the ALJ will ensure that Ms. Scott's opinions are evaluated pursuant to governing SSA policy and regulations. *See, e.g.*, 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1); SSR 06-03p, 2006 WL 2329939, at *2-6.

the opinions of three non-examining sources: Richard Sorensen, Ph.D., a state agency psychological consultant who found that Plaintiff suffered from relatively minimal mental impairments; Renate Wewerka, Ph.D., a state-agency psychological consultant who affirmed Dr. Sorensen's opinion; and Dr. Farnsworth, who attended Plaintiff's hearing and found no more than moderate mental limitations. (*See id.* at 755-56). The ALJ also accorded "little weight" to two other non-examining psychological consultants who found no severe mental impairments. (*See id.* at 755).[3]

Based on her review of this record evidence, the ALJ concluded that Plaintiff possessed an RFC to perform a full range of work at all exertional levels with certain mental limitations. (*Id.* at 753). Moving to step five, the ALJ determined that while Plaintiff is unable to perform any past relevant work, she could perform other jobs existing in significant numbers in the national economy. (*See id.* at 760-61). The ALJ therefore concluded that Plaintiff's work was not precluded by her RFC and that she was not disabled. (*See id.* at 762).

## IV.  DISCUSSION

Plaintiff alleges multiple errors concerning the ALJ's weighting of the opinions of Dr. Padilla, one of the CEs who examined Plaintiff, and the opinions of Ms. Scott, the psychiatric nurse practitioner who regularly treated Plaintiff for her psychological ailments. Because the Court concludes that the ALJ erred in her weighting of Dr. Padilla's opinions, the Court does not reach Plaintiff's additional claims of error. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).[4]

---

[3] Because Plaintiff's motion primarily concerns her alleged mental impairments, the Court does not address the evidence concerning her purported physical impairments.

[4] In reaching this conclusion, the Court also entirely disregards Plaintiff's two-page footnote citing other decisions concerning this ALJ and her consideration of opinion evidence. (*See* Doc. 17 at 25-26 n.26). Plaintiff cites no relevant relationship between those decisions and the instant case, and she points to no reason why those cases—a tiny fraction of the thousands of adjudications by the ALJ over a six-year period—should have any impact on the issues presented in *this* case. The Court therefore agrees with the Commissioner (*see* Doc. 22 at 21-22 & nn.7-8) that

### A. Dr. Padilla Reliance on Plaintiff's Statements

Dr. Padilla evaluated Plaintiff for four hours on May 9, 2017, and he issued a report summarizing his opinions three weeks later. (AR 18, 754). After reviewing Plaintiff's medical records, speaking with her, and performing tests and an examination, the ALJ found that Plaintiff suffered from marked impairments in multiple functional areas. (*See id.* at 18-29). The ALJ cited multiple grounds for according "little weight" to Dr. Padilla's opinions, including a finding that Dr. Padilla "relied heavily on the claimant's subjective report of symptoms and limitations." (*Id.* at 759). Plaintiff challenges this weighting, arguing among other things that the ALJ did not properly assess Dr. Padilla's opinions pursuant to SSA policy, that Dr. Padilla's opinions were not heavily dependent on Plaintiff's subjective statements, and that Dr. Padilla was permitted to consider such statements in any event. (*See* Doc. 17 at 14-16, 18-19). The Commissioner contends that the ALJ was permitted to discount Dr. Padilla's opinions on these grounds. (*See* Doc. 22 at 17-18).

"[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). This rule itself leads to two further corollaries. First, "[i]t is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quotation omitted); *see also Panas ex rel. M.E.M. v. Comm'r, SSA*, 775 F. App'x 430, 437 (10th Cir. 2019) (unpublished) (noting relationship between *Clifton* and the rule against picking and choosing among medical reports). Second, and relatedly, the ALJ is not permitted to "mischaracterize or

---

Plaintiff's citation to these decisions is "improperly and irrelevant," and Plaintiff's counsel is encouraged not to repeat this approach in future filings before this Court.

8

downplay evidence to support her findings." *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (unpublished) (citing *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987)). Rather, an ALJ must provide "appropriate explanations for accepting or rejecting" medical opinions. *See* SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996).[5] An ALJ's failure to appropriately explain why she adopted some of a CE's restrictions but rejected others amounts to legal error. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).

In unpublished caselaw, the Tenth Circuit has acknowledged that "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements." *See Thomas v. Barnhart*, 147 F. App'x 755, 759 (10th Cir. 2005) (unpublished). Moreover, "a consulting, examining physician's testimony is normally supposed to be given more weight than a consulting, non-examining physician's opinion." *Id.* at 760 (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004)). As such, "[t]he ALJ cannot reject [a CE's] opinion solely for the reason that it was based on [a claimant's] responses because such rejection impermissibly substitutes [the ALJ's] judgment for that of [the CE]." *Id.* (citing *Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996)); *see also Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (noting that an ALJ may not reject a treating physician's opinion based on mere "speculative conclusion that the report was based only on claimant's subjective complaints"). Trial courts therefore routinely reject an ALJ's substitution of her own "lay speculation and assumptions" where an examining medical provider's contrary opinion was "supported by tests, evaluations, and reports." *See, e.g.*, *Garcia v. Berryhill*, No. CV 16-1034 CG, 2017 WL

---

[5] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference). Because Plaintiff filed his claim with the SSA prior to March 27, 2017, the new rules for evaluating opinion evidence set forth in 20 C.F.R. § 416.920c do not apply here.

3328184, at *4 (D.N.M. Aug. 3, 2017) (citing *Victory v. Barnhart*, 121 F. App'x 819, 823-24 (10th Cir. 2005) (unpublished)) (finding reversible error where ALJ assigned only "partial weight" to examining provider's opinions concerning severity of limitations and instead concluded from her own observations that claimant "appeared capable in most social situations").

On the other hand, "*Thomas* does not stand for the proposition that an ALJ cannot, in determining *what weight to assign an opinion*, consider that the opinion is based on subjective information provided by the claimant." *Houston v. Colvin*, 180 F. Supp. 3d 877, 888 (D.N.M. 2016) (citing 147 F. App'x at 759-60). "Although the ALJ cannot substitute his judgment for that of a psychiatrist, the Tenth Circuit has not forbidden an ALJ from considering information unavailable to the psychiatrist that discredits the subjective statements on which the psychiatrist relied." *Id.*

Here, the ALJ discounted Dr. Padilla's opinions in part because he purportedly "relied heavily on the claimant's subjective report of symptoms and limitations." (*See* AR 759). However, Dr. Padilla's opinion itself makes clear that he *did not* rely "heavily" on Plaintiff's own statements, but instead considered them as only one of several factors informing his detailed report and the resulting conclusions. In finding otherwise, the ALJ mischaracterized Dr. Padilla's report, ignored probative evidence, and engaged in impermissible "picking and choosing" among the available medical evidence.

To begin with, Dr. Padilla straightforwardly stated that he relied not only on Plaintiff's statements, but also on "a brief interview with her parents, a mental status examination, the administration of the Wechsler Adult Intelligence Scale (WAIS-IV)," and a review of extensive medical records covering the past three years. (*See id.* at 18). Even in the more subjective

portions of the report, Plaintiff's statements are cited relatively few times; at least as frequently, Dr. Padilla states or implies that his information on Plaintiff came from other sources, such as "her mother" and "[m]edical records." (*See id.* at 19-20). And from that point forward, Dr. Padilla's findings appear to be wholly premised on "tests, evaluations, and reports" of a more objective nature. *See Garcia*, 2017 WL 3328184, at *4. Dr. Padilla noted in his mental status examination—a record of certain objective findings—that Plaintiff appeared "disheveled," missed two out of five "serial sevens," was mildly disoriented, showed mild cognitive impairment, had judgment "adversely affected by [her] mood state," showed impaired decision-making, presented dysphoric mood and consistent affect, and demonstrated an "inability to manage mood states over time and the loss of control of her life." (*See* AR at 21). Further, the WAIS-IV administered by Dr. Padilla revealed "borderline" functioning in perceptual reasoning, working memory, and processing speed, and only "low average" function in verbal comprehension. (*See id.* at 22-23). After recording the WAIS-IV results, Dr. Padilla drafted *two and a half pages* of more detailed findings explicitly stemming from this cognitive assessment. (*See id.* at 23-25). Although these objective measures are facially consistent with Dr. Padilla's resulting opinions, the ALJ never mentioned Dr. Padilla's examinations of Plaintiff, the cognitive tests he administered,[6] or his reliance on Plaintiff's medical records. (*Cf. id.* at 759).

In *Victory*, an unpublished but persuasive decision, the ALJ similarly concluded that a treating physician's opinion "was based on claimant's own subjective report of her symptoms" and was therefore due to be disregarded. *See Victory*, 121 F. App'x at 823. The Tenth Circuit rejected this conclusion, holding that there was "no support in the record for the ALJ's conclusion. Nothing in [the physician's] report indicates that he based his opinion on claimant's

---

[6] The ALJ states elsewhere, without elaboration, that Dr. Padilla "did testing" with Plaintiff during her examination. (AR at 754). This "testing" is not addressed in the ALJ's evaluation of Dr. Padilla's opinions. (*See id.* at 759).

11

subjective complaints, and the ALJ's finding ignores all of [his] examinations, medical tests, and reports." *See id.* Because the ALJ's findings "rest[ed] on his speculative, unsupported assumption" that the physician's opinions were based on the claimant's subjective statements, the Tenth Circuit held that the ALJ had "failed to follow the correct legal standards" and that remand was required. *See id.* at 823-24 (citing *Langley*, 373 F.3d at 1121).

Other members of this Court have persuasively applied *Victory* to situations that are similar to the instant case. For example, in *Garcia*, the ALJ concluded that a CE's opinions regarding a claimant's mental limitations were entitled to lesser weight because those opinions were based on the "claimant's representations rather than available evidence" and because the claimant "appeared capable in most social situations." *See Garcia*, 2017 WL 3328184, at *4. However, the record established that the CE, like Dr. Padilla, had performed several tests and recorded his own observation's regarding the claimant's functioning. *See id.* From this record, the Honorable Carmen E. Garza, United States Magistrate Judge,

> discern[ed] no evidence suggesting [the CE] based his opinion on [claimant's] statements rather than his own evaluation and examination. . . . [The] report does not merely parrot [claimant's] subjective complaints. Rather, the ALJ appears to have speculated on her own that [the CE] relied on [claimant's] statements. Doing so was clearly error. . . . Here, as in *Victory*, the ALJ appears to have ignored the tests and evaluation [the CE] performed and relied instead on her "speculative, unsupported assumption."

*See id.* at *4-5 (citing, *e.g.*, *Victory*, 121 F. App'x at 823-24; *Langley*, 373 F.3d at 1121).

Other decisions of this Court, addressing similar circumstances, have echoed Judge Garza's reasoning and conclusions in *Garcia*. *See Tenorio v. Berryhill*, CV 17-1092 JHR, 2019 WL 530016, at *5-6 (D.N.M. Feb. 11, 2019) (citing, *e.g.*, *Robinson*, 366 F.3d at 1083) (reversing where ALJ's conclusion that CE "rel[ied] solely on [claimant's] medical records" appeared to be "nothing more than speculation," given that CE's findings "were based both on her examination . . ., her review of the record, *and* on [claimant's] subjective complaints"); *Sherman*

12

*v. Berryhill*, No. CV 16-310 CG, 2017 WL 3575868, at *6 (D.N.M. Mar. 30, 2017) (quoting *Victory*, 121 F. App'x at 823) (finding reversible legal error where ALJ concluded that CE "relied too heavily" on claimant's subjective statements in formulating mental RFC, when in fact the CE "reviewed [claimant's] medical and personal history" and ALJ "appear[ed] to have ignored [the CE's] review and the possibility that her conclusion 'might well have been based on [her] recent first-hand examination and observation'"); *see also Landon v. Berryhill*, CV 18-309 CG, 2018 WL 6788526, at *7 (D.N.M. Dec. 26, 2018) (same as to treating physician's opinion).

The Court finds *Victory*, *Garcia*, and the other aforementioned decisions to be persuasive and fully applicable to the instant case. As in those cases, the ALJ's conclusion that Dr. Padilla "relied heavily on [Plaintiff's] subjective report of symptoms and limitations" (AR at 759) finds no support in the actual text of his report, which is instead expressly premised on his first-hand observations, objective examination findings, cognitive testing results, and a thorough review of Plaintiff's medical record *in addition to* Plaintiff's statements (*see id.* at 18-29). Because the ALJ's finding rests on her "speculative, unsupported assumption" rather than the evidence itself, her weighting of Dr. Padilla's report does not comport with governing legal standards. *See, e.g.*, *Victory*, 121 F. App'x at 823-24. On this basis, alone, the Commissioner's decision is due to be remanded.

The reversible error does not end there. An ALJ must consider the "supportability" of a medical source's findings—that is, the degree to which the medical source "presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings"— when assigning weight to his opinions. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.920(c)(3). Although an ALJ does not need to discuss every piece of evidence she relied upon, the record must show that she actually considered all of the evidence. *See Clifton*, 79 F.3d at 1009. But

here, as previously noted, the ALJ appears to have altogether ignored the results of the mental status examination and cognitive testing administered by Dr. Padilla (*cf.* AR at 759), which on their face appear to be consistent with his findings concerning Plaintiff's limitations (*see, e.g.*, *id.* at 20-29). On this record, the Court cannot say that the ALJ adequately considered the supportability *vel non* of Dr. Padilla's opinion, meaning that her weighting of that opinion did not following the relevant legal standards.

Further, in discussing the weight that she assigned to Dr. Padilla's report, the ALJ asserted that his findings were "not consistent with or supported by [Nurse Practitioner] Scott's treatment notes, which show that the claimant is generally stable on medications when she is sober." (AR at 759). This is an odd basis for according little weight to Dr. Padilla's report, given that the ALJ similarly accorded "limited weight" to Ms. Scott's opinions, which were in many ways consistent with Dr. Padilla's own determinations. (*See id.* at 758-59). By contrast, as noted above, the ALJ's decision entirely fails to address the results of the mental status examination, WAIS-IV testing, and other objective measures *administered by Dr. Padilla himself*. The resulting impression is that the ALJ chose to disregard Dr. Padilla's objective findings that supported a finding of disability, while instead giving greater credence to the objective findings of an otherwise-rejected non-acceptable medical source whose treatments notes purportedly supported a finding of non-disability. Such "picking and choosing" of medical evidence also amounts to impermissible legal error. *See, e.g.*, *Carpenter*, 537 F.3d at 1265.

In summary, the ALJ's conclusion that Dr. Padilla "relied heavily" on Plaintiff's subjective statements does not accurately characterize Dr. Padilla's report, but instead seemingly reflects the ALJ's own "speculative, unsupported assumption" about that report. *See Victory*, 121 F. App'x at 823. Moreover, by apparently ignoring the results of Dr. Padilla's examination and

testing of Plaintiff, the ALJ engaged in improper "picking and choosing" of medical evidence without demonstrating that she properly considered the supportability of Dr. Padilla's opinions. *See, e.g.*, *Carpenter*, 537 F.3d at 1265; *Clifton*, 79 F.3d at 1009-10. As a consequence, the ALJ's evaluation of Dr. Padilla's opinions failed to apply the correct legal standards and cannot be said to be supported by substantial evidence. Accordingly, Plaintiff's motion is due to be granted, and this matter must be remanded so that the ALJ may properly weigh Dr. Padilla's opinions.

### B.  Other Arguments

Because the foregoing analysis requires remand, the Court need not address Plaintiff's remaining claims of error in detail. However, since the ALJ will be reviewing this matter again in any event, the Court makes some brief observations as to Plaintiff's remaining arguments.

First, Plaintiff objects to the ALJ's conclusion that Dr. Padilla's finding of borderline intellectual functioning was "not consistent with [her] educational or work history." (*See* Doc. 17 at 18) (citing AR 759). Although the ALJ was permitted to consider Plaintiff's pre-onset work history in evaluating Dr. Padilla's report, and apparently did so (*see, e.g.*, AR 759), the ALJ also found that Plaintiff could not actually perform this past relevant work (*see id.* at 760-61), which would appear to weigh against her conclusion that this work history supports a finding of non-disability. Moreover, the record reflects that Plaintiff held only two jobs—below the level of substantial gainful employment—after her onset date, the longest of which included a period of suspension due to her symptoms, and both of which allegedly ended in her termination due to her symptoms. (See *id.* at 751-52, 753); (*see also id.* at 247, 250) (showing 2014 and 2015 earnings history), (*id.* at 750, 778-80) (discussing 2014-16 work history). The ALJ does not explain how this tumultuous post-onset work history would be inconsistent with Dr. Padilla's findings of borderline functioning. *See, e.g.*, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012)

(holding that the court should be able to "follow the adjudicator's reasoning in conducting its review"). While it is not clear that these circumstances independently require reversal, particularly since Plaintiff cites no authority to that effect, on remand the ALJ should more thoroughly explain her reasoning on this point.

Second, the ALJ also discounted Dr. Padilla's opinions on the grounds that he "saw the claimant solely for the purpose of generating material supporting her disability claim, rather than for treatment." (AR at 759). The Commissioner correctly observes that the nature and extent of a medical source's relationship with the claimant is an appropriate factor for the ALJ to consider when according weight to the source's opinions. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). On the other hand, Plaintiff argues that it was inappropriate for the ALJ to outright reject Dr. Padilla's opinion on the basis that he only saw Plaintiff as a one-time CE, given the consideration typically accorded to CE's, and particularly given that the ALJ accorded "great weight" to the opinion of another CE, Raul Young Rodriguez, M.D., who also saw Plaintiff only one time. (*See* Doc. 17 at 19-20) (citing, *e.g.*, *Mascarenas v. Colvin*, No. 1:15-cv-248-CG, 2016 WL 9777191, at *7 (D.N.M. June 20, 2016)). There may well be valid reasons for according different weights to the two CE opinions even though both were obtained in the same manner. *See, e.g.*, *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) ("An opinion found to be an examining rather than treating medical-source opinion may be dismissed or discounted, of course, but that must be based on an evaluation of all of the factors set out in the cited regulations and the ALJ must 'provide specific, legitimate reasons for rejecting it.'"). However, because the ALJ did not explain her reasons for according Dr. Young Rodriguez's opinions "great weight," the Court has no way of knowing whether that is the case here. *See, e.g.*, *Mascarenas*, 2016 WL 9777191, at *7 ("The ALJ rejected [one CE's] opinion, even though it

16

was obtained in the same manner as [another CE's opinions]; therefore, the Court cannot say that substantial evidence supports the weight the ALJ placed on [the first CE's] opinion."). On remand, if the ALJ continues to accord lesser weight to Dr. Padilla's opinions than to those of Dr. Young Rodriguez, she should explain more thoroughly why this is the case.

Finally, Plaintiff raises a number of arguments regarding the weight the ALJ accorded to the opinion of Ms. Scott, Plaintiff's treating psychiatric nurse practitioner. (Doc. 17 at 20-26). Among the reasons cited in assigning "limited weight" to Ms. Scott's opinion, the ALJ found that medical evidence did not support Plaintiff's statements to Ms. Scott that she had a history of "multiple psych hospitalizations/ER stabilization visits" in recent years. (*See* AR at 758). In so finding, the ALJ cited a single 2013 hospitalization involving a suicide attempt, while simply characterizing other emergency room visits as being for "various complaints, including abdominal pain." (*See id.*). However, as Plaintiff notes, the record also establishes that Plaintiff visited an emergency room in June 2016 following another alleged suicide attempt. (*See id.* at 1216-52). Troublingly, the ALJ does not address this hospitalization at all, instead stating only that Plaintiff has not required *inpatient* psychiatric treatment in recent years. (AR at 758). It is not clear whether the ALJ intentionally framed her narrative to avoid discussing Plaintiff's relevant June 2016 hospital visit or simply failed to consider it altogether; either approach would be error. *See, e.g.*, *Clifton*, 79 F.3d at 1009-10 (providing that "[t]he record must demonstrate that the ALJ considered all of the evidence," and she must discuss "significantly probative evidence [s]he rejects"); *see also Bryant*, 753 F. App'x at 641 (ALJ may not "mischaracterize or downplay evidence to support her findings"). The ALJ should address this hospital visit on remand and, if necessary, explain why she finds that incident to be inconsistent with Plaintiff's statements to Ms. Scott.

## V. CONCLUSION

The ALJ erred in her review of Plaintiff's applications for disability insurance benefits and supplemental security income by failing to properly weigh Dr. Padilla's opinions pursuant to controlling legal standards and by failing to support that weighting with substantial evidence. Accordingly, Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 17) is **GRANTED**, and the Court remands this case back to the SSA for proceedings consistent with this opinion.

_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**